**IN re the MARRIAGE OF Tahni L. LARKIN, Petitioner-Appellant**

**and**

**Samuel E. Larkin, Respondent-Appellee.**

**No. 3–983A285.**

Court of Appeals of Indiana,
Third District.

May 10, 1984.

Don G. Blackmond, South Bend, for petitioner-appellant.

Peter L. Rock Away, Plymouth, for respondent-appellee.

GARRARD, Judge.

On March 2, 1983 the marriage of Tahni L. and Samuel E. Larkin was dissolved. The custody of Misty, age 13, the natural child of the wife and adopted child of the husband, was awarded to the wife. The custody of Brent, age 3, who was born of the marriage, was awarded to the husband. At the time of the dissolution the father resided in Marshall County, Indiana and the mother resided in California. The court granted the wife visitation rights with Brent from June 1 to July 20 every year, and granted the husband visitation with Misty each year from July 20 until August 20. The court determined that each custodial parent should be responsible for the care of the child in his/her custody and that neither should be required to make support payments for the benefit of the child in the custody of the other party. Finally, the court divided the personal property of the parties and awarded the marital residence to the husband subject to the mortgage on it. The husband was to hold the wife harmless from any liability for the mortgage debt. The wife subsequently perfected this appeal.

## I. Child Custody Report

In December 1982, while the action was pending, the wife requested that the court order a home study relevant to the pending custody determination and the court ordered studies of both homes. On January 10, 1983 the wife sought a continuance of the January 11th trial setting because the home studies had not been received. The court rescheduled the final hearing for February 7 "with the provision that the court shall proceed with final hearing irrespective of the filing or the non-filing of the home study and welfare reports."

The Marshall County Department of Public Welfare filed its report January 26, 1983. However, nothing in the record discloses that it was made available to counsel prior to the trial, which occurred on February 7. At the conclusion of the trial the court took the case under advisement. On February 11 the report concerning the wife was filed, and the court forwarded to each counsel a copy of the study concerning his client. The parties were ordered to present any additional information, objections or request for further hearing not later than February 18, 1983. On February 14 the wife requested an extension of time and was granted one until her counsel returned to town on February 21st. Nothing further was filed by either party prior to March 2, 1983 when the court entered its decree.

Relying upon IC 31–1–11.5–22 the wife contends that the court committed reversible error by deciding the case without first having given her copies of both investigation reports at least ten (10) days prior to the hearing. The husband, citing *Lovko v. Lovko* (1978), 179 Ind.App. 1, 384 N.E.2d 166, urges that IC 31–1–11.5–22 applies only to post-dissolution proceedings.

The statute provides:

"(a) In custody proceedings after evidence is submitted upon the petition, if a parent or the child's custodian so re-

quests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by the court social service agency, the staff of the juvenile court, the local probation or welfare department, or a private agency employed by the court for the purpose.

(b) In preparing his report concerning a child, the investigator may consult any person who may have information about the child and his potential custodian arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custodian, but the child's consent must be obtained .if he is of sufficient age and capable of forming rational and independent judgments. If the requirements of subsection (c) are fulfilled, the investigator's report may be received in evidence at the hearing, and it shall not be excluded on the grounds that it is hearsay or otherwise incompetent.

(c) The court shall mail the investigator's report to counsel and to any part not represented by counsel at least ten [10] days prior to the hearing. The investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (b), and the names and addresses of all persons whom the investigator has consulted. Any part to the proceeding may call the investigator and any person whom he has consulted for cross-examination. No party may waive his right of cross-examination prior to the hearing.

(d) The court[,] in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continu-

ing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances."

In *Lovko* the court was primarily concerned with whether an order entered at the time of dissolution awarding custody until the end of a school year was a "temporary" or a "permanent" custody order. If it were permanent, then the proceeding before the court on appeal was governed by the substantial change of circumstances standard set forth in IC 31–1–11.5–22(d). On the other hand, if the prior order was "temporary" then the standard to be applied by the trial court was simply that of the best interests of the child as set forth in IC 31–1–11.5–21. However, in *Lovko* the court also had before it the fact that the trial court had considered a home study and investigation which had been requested by the parties but which had not been sent to the parties ten days prior to hearing, etc. as provided by IC 31–1–11.5–22(c). The court found no reversible error since the appellant had not requested a continuance and since it felt this section of the statute dealt only with modification proceedings. 384 N.E.2d at 174.

Although we think the court may have misspoken in consigning section 22 in its entirety to modification proceedings, a broader reading presents appellant with a different problem. Subparagraph (a) provides the application of the statute to the report referred to in subparagraphs (b) and (c). The triggering mechanism chosen by the legislature is "In custody proceedings *after evidence is submitted upon the petition* ...." (emphasis supplied) The plain meaning of the language employed would thus invoke (b) and (c) in those instances where the court in its discretion, after having heard the initial presentation of evidence by the parties, decides to order a home study upon the motion of a parent or custodian.[1] Such an interpretation would

1. This interpretation does present some uncer- tainty as to the meaning of "hearing" as it is

be rational because it would avoid the time and expense necessary to prepare such studies and examine the participants therein, except in those cases where the court felt such information would be beneficial to it in determining the best interests of the child *after it had the benefit of the parties'* evidence.

Furthermore, such an interpretation is furthered by the history of the act itself. The original enactment of section 22 provided for its application:

"(a) In contested custody proceedings, and in other custody proceedings, if a parent or the child's custodian so requests, the court may . . . ."

Public Law 297, Section 22, Acts of 1973.

The 1974 legislature amended the section to provide the present language, "In custody proceedings after evidence is submitted upon the petition . . . ." Public Law 132, Section 11, Acts of 1974. We presume from such an amendment that the legislature intended to change the law and narrow the application of the section. We believe, therefore, that since the home studies in the present case were not made pursuant to a request and order entered after the evidence had been submitted on the petition, the technical requirements of subparagraph (c) were not invoked.

Even so we think it would be a mistake to ignore the intent, also manifested by the legislature, that where such reports are considered by the court in making its determination, the parties should have opportunity to examine into their veracity and the support for any conclusions reached.

Here the trial court granted time that the parties might present additional information, objections or request further hearing. The wife made no affirmative response and requested no further continuance. As in *Lovko* we find she has thus waived her ability to now object to the

court proceeding to make its determination.[2]

## II. Custody

 The wife next challenges the propriety of the court's decision to split custody. Her argument to some extent appears to assert that the husband was not a proper person to act as custodial parent. However, the evidence favoring the court's decision reasonably supports the contrary conclusion and, on appeal, we are not at liberty to reweigh the evidence. *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286.

Beyond this her argument is not particularized except to the extent that it challenges the basic effect of an award of one child to one parent and one to the other.

 The authorities are split as to the propriety of a decree awarding each parent custody of one or some of the children but all consider the best interests of the children as paramount. *See* 98 A.L.R.2d 926, Annotation, Children—Separation for Custody. Such decrees splitting custody have been upheld in this state and are not *per se* an abuse of discretion. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41; *Scott v. Kell* (1956), 127 Ind.App. 472, 134 N.E.2d 828. Although we agree that a decision to split the custody of children should not be lightly regarded, there is ample evidence here to support the award. Misty is the natural daughter of the wife and was adopted by the husband. Brent is the natural son of both. While Misty is clearly the husband's child under the law (IC 31-1-11.5-2(c)), the court may have properly considered her blood tie to her mother. Also, Misty apparently was born in California and lived her first six years there and may have ties there which Brent, having been born in Indiana, does not. It

referred to in subparagraphs (b) and (c), but the uncertainty can be readily explained as having been created by the failure to amend these sections at the time of the 1974 amendment, and resolved by accepting the clear legislative purpose that when the statute is invoked, there

should be a [further] hearing to meet the requirements imposed under (b) and (c).

**2.** The fact that she made, or joined in, the request that the court avail itself of a home study would bar her from asserting error simply in the court's consideration of the study.

was also stipulated that Misty's own preference would be to stay with her mother.

As to the husband's fitness to have custody of Brent, he has been employed by Delmonte Foods for twelve and a half years as a long haul truck driver and was going to be reassigned to a position in the Delmonte plant if awarded custody of Brent. He owns the house in which he has lived for the past fourteen years. He earns approximately $34,000 per year. His parents, with whom Brent has spent much time, up to forty hours some weeks, live nearby. There was other evidence of his ability to care for and his devotion to the child.

While we do not feel that the temporarily unsettled nature of the wife's life should weigh against her, the arguments she makes on the evidence and testimony presented do not establish that she is the parent who clearly should have custody of Brent. We are unable to find an abuse of discretion, and we affirm the trial court's child custody award.

### III. Visitation

■ Wife's counsel fails to advance any cogent argument to support the contention that the court visitation arrangement constituted an abuse of discretion. IC 31-1-11.5-24 provides that "(a) A parent not granted custody of the child is entitled to reasonable visitation rights ...." Wife was granted the right to have visitation with Brent from June 1 until July 20 every year. Counsel fails to show how this arrangement is in any respect unreasonable or contrary to the best interests of the children given the wife's voluntary decision to live in California. We do not believe it is manifestly unreasonable, given the great distance and expense of transportation between California and Indiana, for the court to concentrate visitation in one seven-week period in the summertime. Moreover, by tying this period to the husband's visitation with Misty, the court has attempted to maximize contact between the children and permit a consolidation of their travel arrangements on one annual trip. We find no error in the trial court's visitation arrangement.

### IV. Failure to Award Child Support to Wife

Paragraph Nine of the court's decree states:

"9. That based upon the facts and circumstances wherein each party is awarded custody of one of the minor children, no support order shall be entered against either party, and each custodial parent will be responsible for the medical, dental and optical expenses of the child in their custody."

IC 31-1-11.5-12(a) directs the trial judge to consider all relevant factors including the following listed ones when determining the amount of child support the non-custodial parent should pay the custodial parent:

"(1) The financial resources of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) Physical or mental condition of the child and his educational needs;

(4) Financial resources and needs of the noncustodial parent."

■ The trial court, after presumably considering all relevant factors, concluded that each parent should provide for the support of the child in his or her custody. We will not disturb a trial court's award of child support unless an abuse of discretion is clearly shown. *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41. The trial court in any case is guided by a paramount concern for the best interests of the child. *Geberin, supra.*

When reviewing the trial court's order for an abuse of discretion, we will affirm if there is any evidence supporting the trial court's order. We will reverse only if the order is against the logic and the effect of the facts and circumstances before the court. *Whitman v. Whitman* (1980), Ind. App., 405 N.E.2d 608.

██ We agree with the wife's assertion that it does not follow *a fortiori* from the division of custody that neither parent should contribute to the support of the child not in his or her custody. Of course support is to be determined upon the basis of the needs of the child, its normal standard of living and the available resources of the parents. That remains true whether custody is divided between the parents or is placed entirely in one parent. We also recognize that the evidence here disclosed the father earning substantially more than the mother, although the mother had not yet at the time returned to "full time" employ.

██ The problem, for us as it no doubt was for the trial court, is that at the hearing the parties virtually ignored producing any evidence upon which the court might reasonably establish the monetary needs of either child. Under these circumstances and with the reasonable inference, which was available, that either party was fully capable of supporting the child awarded to him/her, we cannot say the court's judgment was clearly erroneous. No abuse of discretion has been shown.

### V. Property Settlement

The court, as part of the decree of dissolution, ordered the following:

"10. That based upon the evidence as presented, the property should be distributed as follows:

a) The Petitioner is to have as her sole and separate property and free from any claim of the respondent, those items of personal property now in [her] possession, along with the 1976 Monte Carlo automobile.

b) That the Respondent is to have as his sole and separate property and free from any claim of the Petitioner that personal property now in his possession, along with the 1972 Chevy Cheyenne pickup truck.

c) That the Respondent shall have as his sole and separate property, the marital residence, subject to the in-debtedness thereon to which he is to hold the Petitioner harmless."

██ Again, in reviewing the court's property division we will not reweigh the evidence but will examine the division only for an abuse of discretion. *Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169.

██ Neither party introduced evidence as to the particular property each possessed at the time of the hearing or the property's value except for the vehicles and the marital residence. Apparently, however, the wife had taken all of the property from the house that was portable. Record at 124. She now asserts on appeal what she believes to be the respective value of property awarded each party and asks us to find the disparity is not just and reasonable as required by IC 31-1-11.5-11. However, the burden is on the parties to produce evidence of the value of the marital property at the dissolution hearing and the wife is here bound by the evidence she presented at trial. *In re Marriage of Church* (1981), Ind.App., 424 N.E.2d 1078. She indicated in response to her attorney's question at the hearing that while she was interested in the equity in the marital residence, as far as she was concerned what they each had in their possession was fine. Considering the totality of the evidence concerning the acquisition and disposition of the parties' assets from the perspective favorable to the judgment, we can find no abuse of discretion in the court's award.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.