In re the Marriage of Mary F. (Allman) DOWDEN, Appellant–Petitioner,

v.

Randall R. ALLMAN, Appellee–Respondent.

No. 49A05–9702–CV–70.

Court of Appeals of Indiana.

June 30, 1998.

---

Richard A. Clem, Alden & Clem, Indianapolis, for Appellant–Petitioner.

Jerald L. Miller, Miller O'Bryan & Turner, Indianapolis, for Appellee–Respondent.

## OPINION

SHARPNACK, Chief Judge.

Mary (Allman) Dowden appeals the trial court's judgment dividing the marital estate accruing during her marriage to Randall Allman. She raises two issues for our review, which we restate as follows:

1) whether the trial court erroneously considered the estimated costs of sale in determining the value of the marital home; and

2) whether the trial court erroneously excluded the value of Allman's pension and savings plans from the marital pot.

We affirm in part, reverse in part, and remand with instructions.

The undisputed facts follow. Dowden filed a petition for the dissolution of her marriage to Allman. The trial court subsequently granted a summary dissolution, but left a number of issues open, including the issue of property division. After a hearing on these issues, the trial court entered its final dissolution decree in which it divided the marital assets equally. Additional relevant facts will be provided as necessary for discussion.

## I.

■ The first issue raised for our review is whether the trial court erroneously deducted the estimated costs of sale in valuing the marital home. The trial court has broad discretion in ascertaining the value of property in a dissolution action, and its valuation will not be disturbed absent an abuse of that discretion. *Cleary v. Cleary*, 582 N.E.2d 851, 852 (Ind.Ct.App.1991). The trial court does not abuse its discretion if there are sufficient evidence and reasonable inferences therefrom to support the result. *Id.* In other words, we will not reverse the trial court unless the decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Dowden argues that the trial court's inclusion of the estimated costs of sale of the home was an abuse of discretion because Allman testified that he had no current plans to sell the home. We agree.

■ Allman did indicate in his testimony that, due to his financial situation, he may have to sell the home if he was required to pay Dowden a sum of money as part of the dissolution decree. However, this was the only evidence of the possible sale of the house. Any plans Allman may have had to sell the house were too speculative to justify the trial court's inclusion of the estimated costs of sale in the value of the house. *See Granger v. Granger*, 579 N.E.2d 1319, 1320 (Ind.Ct.App.1991) (holding that the trial court erroneously considered the anticipated tax liability from the possible and future sale of the husband's business because the business was not ordered sold by the trial court in the property disposition), *trans. denied.*

Furthermore, the amount awarded for the costs of sale was also speculative in that it included an amount for real estate sales commission, which assumed that Allman would have employed a real estate agency to sell the house. *See Qazi v. Qazi,* 546 N.E.2d 866, 871 (Ind.Ct.App.1989) (noting that, aside from the actual liquidation of a pension plan being too speculative to be considered, the amount of taxes that might be paid upon such liquidation was also too variable to justify consideration in determining the value of the pension), *trans. denied.*

Although it may be appropriate for a trial court to include the costs of sale that are a direct result of the disposition of property, where such costs are speculative in nature, we hold that including such costs in the valuation of property constitutes an abuse of discretion.[1] *See Cleary,* 582 N.E.2d at 852. Therefore, we reverse the trial court's valuation of the house and remand with instructions to recalculate the value of the house excluding the estimated costs of sale.

## II.

The second issue raised for our review is whether the trial court erroneously excluded the value of Allman's pension and savings plans from the marital assets. All marital property goes into the marital pot for division. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1325 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* Indiana Code § 31–9–2–98 defines "property" for the purposes of dissolution as:

"(b) ... all the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon

termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage."

With respect to the pension plan, Dowden asserts that the value of the pension plan should have been included in the marital pot because "there is no evidence in the record to find that [Allman] was not vested in his pension rights." Appellant's brief, pp. 15–16. We disagree.

It is well established that for a pension to be included in the marital pot, the pension must be vested. *See* I.C. § 31–9–2–98; *Grammer v. Grammer,* 566 N.E.2d 1080, 1083 (Ind.Ct.App.1991); *Skinner v. Skinner,* 644 N.E.2d 141, 144 (Ind.Ct.App.1994). When asked why he did not include any value for his pension in his listing of marital assets, Allman stated that he was not vested and that his pension amount was "zero." Record, p. 347. Although Dowden presented the value of the pension in her own exhibits, she did not present any evidence that Allman's pension was vested or that he had any right to withdraw the money. Absent any clear evidence that Allman's pension was vested, the trial court appropriately excluded it from the marital pot. *See Grammer,* 566 N.E.2d at 1083 (holding that the trial court erroneously included the husband's pension plan in the marital assets where the record was not clear that the pension had vested); *see also Livingston v. Livingston,* 583 N.E.2d 1225, 1228 (Ind.Ct.App.1992) (holding that the trial court did not err by excluding the husband's 401K plan from the marital assets where the

---

1. The situation before us is analogous to a situation where the trial court must decide whether to consider the tax consequences of the property disposition pursuant to Ind.Code § 31–15–7–7. This section requires the trial court to consider tax consequences only where they "necessarily [arise] from the plan of distribution." *Granger,* 579 N.E.2d at 1320. "A taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate." *Id.* at 1321. Potential tax consequences of a future disposition of property are speculative in nature and should not be considered in making the property distribution. *Qazi,* 546 N.E.2d at 871. We see no reason why this same principle should not be applied where the consequences to be considered are other costs of sale or liquidation aside from the tax consequences.

"evidence does not establish unequivocally a vesting or present value of the plan"), *trans. denied.* Therefore, we affirm the trial court's exclusion of the value of the pension plan from the marital assets.

Next, Dowden contends that the trial court erroneously excluded the value of Allman's savings plan from the marital pot. To determine if the savings plan is subject to division we must take a closer look at I.C. § 31–9–2–98. First, the record does not indicate that Allman has a present right to withdraw the funds under section (b)(1). Also, Allman's savings plan is not "disposable retired or retainer pay" under section (b)(3). As such, we are left to determine if the savings plan constitutes "property" subject to division pursuant to section (b)(2). This section allows for inclusion of pension or retirement funds that are vested but not payable until some time after dissolution. We have held that for the pension to qualify as "property" under section (b)(2), "it is not important that the funds are eligible for immediate withdrawal. The time frame within which the party may access the funds is not relevant. Rather, the determinative factor is whether the party 'possesses' the funds." *Skinner,* 644 N.E.2d at 144.

Allman testified that he was involved in a savings plan through his employer in which the company matched seventy-five cents on each dollar that Allman contributed. Allman also indicated that he made contributions to the plan through a payroll deduction and that the contributions were from his own money. He further testified that he could not receive the money contributed by his employer until he was vested.

This evidence indicates that at least a portion of the value of the savings plan originated from contributions made directly by Allman. There is no other evidence nor any logical reason to conclude that he did not have "possession" of the money that he had contributed himself or that it would be "forfeited upon termination of employment." I.C. § 31–9–2–98(b)(2); *See Skinner,* 644 N.E.2d at 144. Allman did testify that, aside from being vested, "the only other way [he] could receive that money is through a hardship withdrawal ...." Record, p. 354.

However, even if Allman does not have immediate access to his own contributions, this portion of the plan contributed by Allman would still qualify as "property" under section (b)(2) because when a party has a right to the funds, "the time frame within which the party may access the funds is not relevant." *Skinner,* 644 N.E.2d at 144. Therefore, we conclude that this portion of the plan value should have been included in the marital pot.

On the other hand, the evidence also indicates that Allman did not have a right to withdraw the funds contributed by his employer until he was vested with the company. As we concluded with his unvested pension plan, this unvested portion of the savings plan would not be subject to inclusion in the marital assets. *See* I.C. § 31–9–2–98. Therefore, we reverse the trial court's exclusion of the entire value of the savings plan from the calculation of marital assets and remand with instructions for the trial court to recalculate the marital assets to include that portion of the savings plan value that was directly contributed by Allman.

For the foregoing reasons we affirm in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded with instructions.

RUCKER, J., concurs.

STATON, J., dissents in part and concurs in part with opinion.

STATON, Judge, dissenting in part and concurring in part.

I concur with the Majority except for the treatment of the savings plan. The Majority has engaged in sophistry when it separates out the contributions of Allman from those of his employer as vested. There is absolutely no testimony or exhibits in the record which authorize the separation suggested by the Majority. "His money" and the employer's money are inseparable. To separate Randall Allman's contribution out of the fund before the entire plan is vested ignores the law and the conditions of the plan. The Majority's

separation is an equitable illusion unsupported by the evidence and the law.

None of the conditions regarding the savings plan was introduced as evidence except through the testimony of Allman. He testified that his employer could not take the funds away from him after the funds had become vested. The funds would not become vested until January 1,1993 according to Allman's testimony. This implies that he has no right to "his money" until the fund is vested. Therefore, the savings plan should not have been included in the marital estate. However, if the trial court finds that Allman had a right to withdraw from the savings plan, the *entire* fund may be made a part of the marital estate. There is no half in and half out compromise as suggested by the Majority. It is the vestment or right to the *entire* funds in the saving plan that is the crucial question for the court to decide on remand. *See* IC § 31–1–11.5–11(a); *Staller v. Staller,* 570 N.E.2d 1328 (Ind.Ct.App.1991).