**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CYNTHIA A. HOGAN**
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**JANA K. STRAIN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HAROLD M. BACCHUS JR., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1203-DR-119 |
| | ) | |
| FAZIA DEEN-BACCHUS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

**APPEAL FROM THE ALLEN SUPERIOR COURT**
The Honorable James R. Heuer, Special Judge
Cause No. 02D07-0702-DR-153

**April 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

STATEMENT OF THE CASE

Harold Bacchus ("Husband") appeals the trial court's disposition of marital property following the dissolution of his marriage to Fazia Deen-Bacchus ("Wife"). We affirm in part, reverse in part, and remand.

ISSUES

As an initial matter, Wife asks that we dismiss this appeal because Husband failed to pay the filing fee set forth in Indiana Appellate Rule 9(E) before expiration of the deadline to file an appeal. We decline to dismiss Husband's appeal for the reasons set forth below and thus address his claim that the trial court erred in its disposition of the marital property. We then address Wife's claim for appellate attorney's fees.

FACTS AND PROCEDURAL HISTORY

Husband and Wife married in September 1985 and have three children, two of whom are now emancipated. Wife petitioned to dissolve the marriage on February 7, 2007. At the time, Wife was an attorney who had been admitted to practice just a few years earlier, and Husband was an Air Force physician and an emergency room physician. The parties also owned and operated a business, Med-I-Qwik.

The trial court dissolved the marriage in January 2009 but left disposition of the marital property pending. Later that year, Husband retired from the Air Force and his contract as an emergency room physician was terminated. A hearing regarding disposition of the marital property was held over several days. The trial court subsequently entered an order in January 2011 identifying marital assets and debts,

2

finding the net worth of the marital property to be $1,405,763, and giving Wife 55% and Husband 45% of the property.

Both parties filed motions to correct error. After a hearing over another several days, the trial court entered an order in February 2012 reducing the net worth of the marital property to $1,353,333 and dividing the property equally between the parties. Husband now appeals.

DISCUSSION AND DECISION

I. WIFE'S REQUEST TO DISMISS APPEAL

The trial court issued its order on the respective motions to correct error on February 17, 2012, and thus Husband's notice of appeal was due March 19, 2012. Husband timely filed his notice of appeal on March 14, 2012, but failed to include the filing fee required by Indiana Appellate Rule 9(E).[1]

On March 20, 2012, the Clerk of this Court noted on the docket that Husband had not paid the filing fee. On March 28, 2012, this Court ordered Husband to file an amended notice of appeal fully complying with Appellate Rule 9 within thirty days, and Husband paid the filing fee on the same day. He then filed an amended notice of appeal on April 13, 2012.

---

[1] Indiana Appellate Rule 9(E) provides in relevant part:

> The appellant shall pay to the Clerk the filing fee of $250. . . . The filing fee shall be paid to the Clerk when the Notice of Appeal is filed. The Clerk shall not file any motion or other documents in the proceedings until the filing fee has been paid.

Wife filed a motion to dismiss the appeal in November 2012, arguing that Husband should have paid his filing fee by March 19, 2012. A divided motions panel of this Court denied the motion.

Wife now asks that we revisit the issue of whether Husband's failure to pay the filing fee before the time to file his notice of appeal had expired warrants dismissal. While reluctant to overrule orders decided by our motions panel, this Court has inherent authority to reconsider any decision while an appeal remains *in fieri*. *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406, 407 (Ind. Ct. App. 2007). In addition, because we prefer to decide cases on their merits, an appeal may be allowed where there has been a good faith effort to substantially comply with our rules and where a minor violation is not flagrant. *Cox v. Matthews*, 901 N.E.2d 14, 19 (Ind. Ct. App. 2009), *trans. dismissed*.

Husband made a good faith effort to substantially comply with Appellate Rule 9 by timely filing his notice of appeal notwithstanding his failure to pay the filing fee. Moreover, his payment of the filing fee on the same day this Court issued its order giving him thirty days to fully comply with Appellate Rule 9 indicates that his error was not a flagrant disregard of our rules. We therefore decline to dismiss Husband's appeal.

## II. DISPOSITION OF MARITAL PROPERTY

Husband contends that the trial court erred by excluding and including certain assets, ordering an equal division of the marital property, failing to credit him for funds Wife removed and did not repay, and failing to consider other items.

The parties agree that the trial court sua sponte issued specific findings of fact and conclusions thereon. Where a trial court enters findings sua sponte, the specific findings

4

control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Brinkmann v. Brinkmann*, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

## A. Exclusion/Inclusion of Assets

Husband first contends that the trial court erred in its exclusion and inclusion of certain assets. It is well-established in Indiana that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a) (1997); *Webb v. Schleutker*, 891 N.E.2d 1144, 1149 (Ind. Ct. App. 2008). The determinative date when identifying marital property subject to division is the date the dissolution petition was filed. *Webb*, 891 N.E.2d at 1149. While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

Account #1705

Husband claims the parties stipulated that Account #1705 was marital property and argues that the trial court erred by excluding it. At the hearing, however, Wife noted that the parties were stipulating

> as to certain facts concerning the marital estate. With respect to certain
> assets about which the parties may not necessarily agree, they have in
> various instances stipulated the admissibility of respective exhibits the
> parties would otherwise intend to offer for purposes of the evidentiary
> proceeding and argument in this cause with regard to those assets

5

notwithstanding. But we have not come to an agreement as to the existence of value of variously these assets.

Appellant's App. p. 84. Wife then recited a lengthy list of stipulations. Among them, she stated, "With respect to [Account] #1705, while the parties do not stipulate the ultimate fact, they do stipulate the admissibility of respective exhibits each intends to offer concerning that particular item." *Id.* at 85. At the end of Wife's recitation, the court asked Husband if he agreed with the stipulations. Husband responded, "Yes your Honor, and I agree with the representations that have been made." *Id.* at 88.

The parties therefore did not stipulate that Account #1705 was marital property. Instead, they stipulated only to the admissibility of any exhibit regarding the account. *See also* Respondent's Ex. FFF (Husband's own balance sheet, which indicates stipulation on Account #1705 only as to admissibility of exhibit).

Husband nonetheless faults Wife for not objecting to admission of his exhibit regarding Account #1705, Respondent's Exhibit U.[2] Wife did not need to object, however, as she had already stipulated to the exhibit's admissibility.

In any event, Respondent's Exhibit U shows that Wife owned Account #1705 and that its "Date of Initial Deposit or Last Maturity" was October 7, 2008, after Wife's February 2007 dissolution petition was filed. Absent any evidence that Account #1705 or the funds within it existed before February 2007, the trial court did not err by excluding it from the marital property.

---

[2] A label at the bottom of Respondent's Exhibit U says that the stipulation covers the exhibit as an "[a]sset, not value." Regardless of the label, Husband points to nothing in the record supporting his claim that Wife stipulated to Account #1705 as marital property.

6

Account #3776

Husband argues that the trial court erred by excluding Account #3776. At the hearing, the parties stipulated that the account was one of the children's accounts:

> [WIFE]: [Account #]3776. The parties stipulate that, that is an asset which exists in the form of a Uniform Tr[ansfers to] Minor[s] Act account in the name of [one of the children]. As a result of which I believe it is the stipulation that, that account would be, would be more properly be placed on both parties['] balance sheet of children's assets.
> [HUSBAND]: We would agree, Your Honor.

Tr. p. 158. The trial court accepted the stipulation, noting that Account #3776 should be on the children's balance sheet. *Id.* at 159.

At the end of the hearing, the trial court left the record open for the limited purpose of receiving a stipulation as to current values of investment assets. *See id.* at 205; Appellant's App. p. 17. Over a month after the hearing, Husband filed a Notice to the Court and Request for Value Determination, noting that Wife had not responded to his communications regarding the joint stipulation of current values of investment assets or his request for documentation of Account #3776. In paragraph 7, he gave current balances of four accounts, and in paragraph 9, he stated, "[Husband] would request that since [Wife] failed to provide proof of the type of account [Account] #3776 was, the court find that the asset shall be included in the estate and distributed accordingly." Appellant's App. p. 92. The trial court subsequently entered an order stating that paragraphs 7 and 9 "are findings of fact in these proceedings." *Id.* at 96.

The trial court's final order, though, excluded Account #3776 from the marital property. We cannot say this was error. Once parties enter into a stipulation and the

7

court approves it, the stipulation is binding upon all involved. *Ehle v. Ehle*, 737 N.E.2d 429, 433-34 (Ind. Ct. App. 2000). However, a stipulation may be modified if the existence of fraud, mistake, or undue influence is proved. *Id.* at 434. Here, Wife and Husband stipulated that Account #3776 was one of the children's accounts, and the trial court approved the stipulation. Husband's Notice to the Court did not allege fraud, mistake, or undue influence. Rather, Husband noted only that, after the stipulation, he asked for documentation of the account and Wife failed to respond. Appellant's App. pp. 91, 95. This was not enough to invalidate the stipulation. *See Ehle*, 737 N.E.2d at 434 ("In opting not to conduct her own discovery, but choosing instead to rely upon Husband's representations of the marital assets, Wife may not later assert that the stipulation should be set aside upon the basis that assets were omitted."). The trial court thus did not err by excluding Account #3776 from the marital property.

Account #8160

Husband argues in his opening brief that the trial court erred by excluding Account #8160 from the marital property but then concedes in his reply brief that there may not have been sufficient evidence of the account. Indeed, the only reference to Account #8160 is on his marital balance sheet, Respondent's Exhibit FFF, which indicates that the exhibit showing the account is Respondent's Exhibit AA. However, Respondent's Exhibit AA was apparently never offered or admitted into evidence. The trial court therefore did not err by excluding Account #8160 from the marital property. *See Quillen v. Quillen*, 671 N.E.2d 98, 103 (Ind. 1996) (trial court's exclusion of accounts presumed proper where no evidence was presented as to their balances).

8

$10,500 in safety deposit box

Husband argues that the trial court erred by excluding "funds held by Wife in the safety deposit box in the amount of $10,500.00." Appellant's Br. p. 14. As Wife provides no response on this point, Husband only needs to show prima facie error. *Khaja v. Khan*, 902 N.E.2d 857, 868 (Ind. Ct. App. 2009) (appellant need only show prima facie error where appellee fails to respond to an issue in appellant's brief).

It appears that this $10,500 is the same $10,500 in bonds and cash to which Husband refers in his fact statement. Specifically, he cites Respondent's Exhibit QQ, which is a copy of Wife's discovery responses stating that Husband and Wife share a safety deposit box that includes $5000 in bonds "for" one child, $5000 in bonds "for" another child, and $500 in cash. This evidence indicates that the bonds are property of Husband and Wife, albeit with the parties' intent to give them to the children, rather than the children's property outright. We thus conclude that Husband has made a prima facie case that the bonds are marital property subject to division. Husband has also shown prima facie error with regard to the $500 in cash. We remand with instructions to include this asset in the marital property and to divide it accordingly.

Alleged $20,000 Canadian certificate of deposit

Husband argues that the trial court erred by excluding "Wife's $20,000.00 Canadian Certificate of Deposit." Appellant's Br. p. 14. Although he makes no further argument or analysis, his fact statement sheds more light on the issue: Husband claims that this certificate of deposit was not discovered until after the court's initial order distributing the marital property, when Husband collected personal belongings from the

9

office of Wife's counsel. He filed a second motion to correct error regarding that certificate of deposit.

Our review of the record shows that Wife's counsel filed an unsworn response informing the court that, earlier in the divorce proceedings, the contents of Wife's storage locker were sent to the office of Wife's counsel for safekeeping and that Husband's counsel later inspected the contents. Appellee's App. p. 6. Testimony at the hearing on the motions to correct error was in the same vein. *See* Tr. pp. 188-90.

The evidence thus shows that the certificate of deposit could have been discovered by Husband before the final hearing. Moreover, the only evidence Husband cites for the alleged asset is a 1987 deposit receipt from The Royal Bank of Canada and a Canada Trust document showing that a certificate of deposit was issued in 2000 and had a maturity date in 2001. Respondent's Ex. F. This is not sufficient to show that the alleged asset existed at the time the dissolution petition was filed in February 2007. The trial court did not err by excluding it.

Account #9329

Husband argues that the trial court erred by excluding Account #9329. The evidence of who opened or owned this account, however, is ambiguous at best. Respondent's Exhibit DD includes an account inquiry for Account #9329 and a statement for Account #6569, which is the parties' joint savings account. The statement shows a $5000 withdrawal from Account #6569 about one month before Wife filed her dissolution petition, and the account inquiry shows that Account #9329 was opened the same day with $5000. The exhibit does not show who made the withdrawal or who

10

opened or owned Account #9329. Wife testified that she did not remember making the withdrawal from the joint account or opening Account #9329. Tr. p. 177. In the absence of any conclusive evidence that either Husband or Wife owned Account #9329, the trial court did not err by excluding it.

Loan to Husband's brother

Husband argues that the trial court erred by including in the marital property $28,800 in loans to his brother. As proof of this loan, Wife submitted Petitioner's Exhibit 12, which is a 1994 notarized letter signed by Husband to his brother documenting various loans totaling $28,800 made to his brother from 1986 through 1994. Before the exhibit was offered and admitted, Husband said that his brother had never borrowed any money from him. Tr. p. 24. The trial court was entitled to make a credibility determination between Wife, who offered the exhibit as evidence of a marital asset, and Husband, who denied ever making a loan to his brother in the face of a notarized letter signed by him documenting a $28,800 loan. The trial court did not err.

## B. Equal Division of Property

Husband next contends that the trial court abused its discretion by equally dividing the marital property. An equal division of marital property is presumed by statute to be just and reasonable. Ind. Code § 31-15-7-5 (1997). This presumption may be rebutted by a party who presents relevant evidence that an equal division would not be just and reasonable. *Id.* Subject to the statutory presumption of equal division, the disposition of marital property is committed to the sound discretion of the trial court. *Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

Husband's main contention is that the trial court failed to consider that marital assets were used to fund Wife's legal education but that the parties separated before Husband could benefit from her law degree. He cites *In re Marriage of Coyle*, 671 N.E.2d 938 (Ind. Ct. App. 1996), where the trial court found that the wife had dissipated marital assets in transactions with her children from a former marriage. Those transactions included payments toward college expenses and used vehicles for one child and failure to charge interest on the sale of a house to another child. This Court discussed dissipation at length and remanded with instructions for the trial court to hear oral argument and reconsider its findings of dissipation. *Id.* at 944.

*Coyle* does not persuade us that Wife dissipated marital assets by pursuing a law degree. In fact, we noted there that "the fact that one spouse or the marriage itself does not benefit directly from an expenditure does not, standing alone, require a finding that a dissipation of marital assets has occurred." *Id.* at 943. The trial court did not err by failing to consider the funding of Wife's legal education as a dissipation of marital assets. *See Roberts v. Roberts*, 670 N.E.2d 72, 76 (Ind. Ct. App. 1996) (funding of husband's law degree not dissipation even though wife did not receive any benefit), *trans. denied*.

Husband then argues that the trial court's equal division of the marital property was an abuse of discretion because Wife's earning potential is greater than his. As noted above, the court's initial order gave Wife 55% and Husband 45% of the marital property. In his first motion to correct error and at the subsequent hearing, Husband challenged the division, noting his retirement from the Air Force, the loss of his contract as an emergency room physician, and Wife's employment as an attorney. The court was

12

apparently persuaded, as its order on the motions to correct error found that neither party had rebutted the presumption of equal division and therefore gave each party 50% of the marital property.

Husband now presents a similar argument. He claims that, as an attorney who is several years younger than him, Wife has a longer period of time to make a good living. Without citation to the record, he also says that he is at the end of his career, has been replaced with younger doctors, and is unable to maintain medical malpractice insurance.

"When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Hatten v. Hatten*, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005) (quotation omitted), *trans. denied*. Here, the parties' marriage lasted over twenty years. Husband and Wife both contributed to the marriage, with Husband working as a physician, Wife taking care of the children and managing the family finances, Tr. pp. 73-74, and both working at Med-I-Qwik. We cannot say that the trial court abused its discretion by equally dividing the marital property.

## C. Credit for Funds Removed and Not Repaid

Husband also contends that the trial court failed to credit him for funds Wife removed after the dissolution petition was filed and did not repay. On this point, the trial court found, "While [Wife] removed portions of intangible assets (accounts) during the pendency, they were repaid in full." Appellant's App. p. 101.

13

$500 for Wife's withdrawal from Account #7143

Husband argues that the trial court erred by failing to credit him for Wife's withdrawal of $500 from a joint account after the dissolution petition was filed. He cites Respondent's Exhibit J-7, which is a withdrawal slip indicating that Wife withdrew $500 from Account #7143 on February 17, 2007, just ten days after the dissolution petition was filed. However, nothing on the exhibit indicates that Account #7143 was a joint account. Husband's claim therefore fails.

$500 for Wife's withdrawal from Account #6569

Husband argues that the trial court erred by failing to credit him for Wife's withdrawal of $500 from Account #6569 after the dissolution petition was filed. Wife does not respond to the merits of Husband's claim; instead, she says we should reject it for Husband's failure to provide citations to record. Regarding this claim, Husband does not include any citations in his argument section, but he does cite Respondent's Exhibit SS in his fact section. We find this sufficient in this case. As Wife presents us with no argument on the merits, Husband only needs to show prima facie error.

Respondent's Exhibit SS is a withdrawal slip and account inquiry indicating that Wife withdrew $500 from Account #6569, a joint account of the parties, in May 2007, three months after the dissolution petition was filed. This is prima facie evidence that Wife took $500 from their joint account in May 2007. However, the trial court awarded Account #6569 (as valued on February 1, 2007 at $3296) to Wife in its division of the

14

marital property. *See* Appellant's App. pp. 102, 108; Respondent's Ex. DD. Wife's withdrawal from an account ultimately awarded to her presents no reversible error.[3]

$9974.99 for Wife's withdrawals from business savings and checking accounts

Husband argues that the trial court erred by failing to credit him for Wife's withdrawals of $9974.99 from their Med-I-Qwik savings and checking accounts. He says that her withdrawals violated the trial court's April 11, 2007 order, in which the court stated, "[Husband] shall assume the sole management, control, and responsibility for the day to day operation of Med-I-Qwik." Appellant's App. p. 43.

Wife does not respond to the merits of Husband's claim and says only that we should reject it for failure to provide citations to the record. We find Husband's reference to the trial court's April 11, 2007 order, which is included in the Appellant's Appendix, and his citation to Respondent's Exhibits N-1, N-2, and N-3 sufficient.

N-1 is a withdrawal slip showing that Wife withdrew $3908.82 from Med-I-Qwik's savings account on June 29, 2007. N-2 is a withdrawal slip showing that Wife withdrew $5000 from Med-I-Qwik's checking account on June 29, 2007. N-3 is a withdrawal slip showing that Wife withdrew $1066.17 from Med-I-Qwik's savings account on July 3, 2007.[4] Also in evidence are bank statements verifying these withdrawals. *See* Petitioner's Ex. 11.

---

[3] To the extent Husband claims he is entitled to the $500 because "the funds were from a deposit made by the husband on February 23rd, 2007 from his military pay," Appellant's Br. p. 9, the claim is waived for failure to provide any citations to the record.

[4] Husband actually argues that he should be credited for Wife's withdrawals of $9968.99. However, the sum of her withdrawals is $9974.99.

15

This is sufficient to show prima facie error. The trial court ultimately awarded Med-I-Qwik's savings and checking accounts to Husband. We therefore remand with instructions to order Wife to give Husband $9974.99.

$7700 for Wife's advances against home equity line of credit

Husband argues that the trial court erred by failing to credit him for Wife's three advances against the marital residence's line of credit after the dissolution petition was filed. At the final hearing, Husband presented evidence that Wife advanced $9700 from Account #6581 against their home equity line of credit in August 2007 but repaid only $9000 in October 2007. *See* Respondent's Ex. E-1, E-2; Tr. pp. 118-19. He further presented evidence that Wife advanced $4000 in March 2009 and $3000 in May 2009 from Account #6581 against their home equity line of credit. *See* Respondent's Ex. L-1, L-2, L-3; Tr. pp. 123-24.

Wife does not respond to Husband's claims regarding the $4000 and $3000 advances. As to the $700 not repaid from the $9700 advance, Wife points to the trial court's finding that she fully repaid assets she removed during the pendency of the proceedings but fails to cite any evidence to support it. Husband has therefore demonstrated prima facie error. Because the trial court's order held Husband liable for Account #6581, *see* Appellant's App. p. 105, we remand with instructions to order Wife to give Husband $7700.

## D. Other Items

Husband finally contends that the trial court erred by failing to consider other items: maintenance payments to Wife, payments toward college expenses, his military pension, and financial burdens allegedly imposed by the court's disposition.

<u>Husband's maintenance payments to Wife</u>

While disposition was pending, the trial court ordered Husband to make maintenance payments to Wife from February 2007 through July 2009. When distributing the marital property, the trial court credited Wife for Husband's maintenance arrearage of $24,880. *See* Appellant's App. pp. 102, 142; Petitioner's Ex. 25.

Husband claims error in two regards. First, he argues the court should have credited him for all maintenance payments he made to Wife. *See* Appellant's Br. p. 15. He presents no cogent argument or citations to authority regarding why he should be credited for these payments. The issue is therefore waived. *See* Ind. Appellate Rule 46(A)(8)(a); *Khaja*, 902 N.E.2d at 871 (waiving issues for failure to present cogent argument or provide adequate citation to authority).

Second, he argues the court improperly calculated his maintenance arrearage by failing to account for over $3000 in payments he made in 2009. *See* Appellant's Br. p. 17. Although he provides no citation to the record in his opening brief, his reply brief cites a page in the Appellant's Appendix showing a page of Respondent's Exhibit DDD. That page indicates he wrote Med-I-Qwik checks to Wife for over $3000 in 2009. *See* Appellant's App. p. 196. However, the entire exhibit includes copies of the checks, whose memo lines refer not to maintenance but to her services as Med-I-Qwik's

17

president, tax forms, and IRS duties. *See* Respondent's Ex. DDD. It was not error for the trial court to exclude these checks as maintenance payments.

Husband's payment of college expenses

The trial court's order also credited Wife for Husband's failure to contribute to one of the children's college expenses in the amount of $8651. *See* Appellant's App. pp. 102, 142; Petitioner's Ex. 46 (showing Husband owed $8651.11 for 2008 college expenses). Husband argues the court did not credit him for over $6000 he paid toward these expenses. By his own accounting, all these payments except for one are for 2009 and 2010 expenses, not 2008 expenses, *see* Respondent's Ex. DDD, and he provides us with no way to tell whether the court already considered these payments in its calculation. *See Barth v. Barth*, 693 N.E.2d 954, 956 (Ind. Ct. App. 1998) ("[W]e are unwilling to sift through a record to locate error so as to state an appellant's case for him."), *trans. denied*. As for his alleged payment for "[s]upplies and books" in 2008, the proof of this payment is a bank online account activity printout showing he spent some $600 on December 27, 2008 at a Kohl's department store. The court was within its discretion in concluding this payment was not for supplies and books. There is no error.

Husband's military pension

Husband argues in his opening brief that the trial court abused its discretion by giving him his military pension, valued at $218,056, instead of dividing it between the parties. Although he notes several inequities, his main contention appears to be that he is forced to bear the risk that he will not survive long enough to realize the full value of the asset. Wife responds that this risk has already been considered in determining the

18

pension's value. Wife is correct. "Determining the present value of [a] pension would require actuarial evidence, based on the probability that the employee spouse will live to the date of vesting and that she will remain in the pension plan until that time." *Schueneman v. Schueneman*, 591 N.E.2d 603, 609 (Ind. Ct. App. 1992) (quotation omitted). Here, the court valued Husband's military pension based on the parties' stipulation as to its present actuarial value. *See* Appellant's App. p. 86 ("With regard to . . . Respondent's Military Pension, the parties stipulate the present actuarial value of that asset to the estate as $218,056.00.").

Husband concedes in his reply brief that "if this was Husband's the [sic] only argument, the allocation of the full amount of the asset would not appear to be inappropriate." Appellant's Reply Br. p. 8. However, he claims the allocation of the pension to him is not just and reasonable in light of all his other claims of error. We fail to see his logic. The allocation of an asset cannot be error merely because there are other potential trial court errors. In any event, we have separately addressed his other claims. Husband has shown no error with regard to his military pension.

Financial burdens allegedly imposed by the court's disposition

Finally, Husband argues that the trial court failed to consider "the financial burdens of the unliquidated tangible assets" and that he will incur substantial fees and expenses when he sells the marital home. Appellant's Br. p. 18. Considering the costs to sell the home, however, would have been an abuse of the trial court's discretion. *See Dowden v. Allman*, 696 N.E.2d 456, 458 (Ind. Ct. App. 1998) ("Although it may be appropriate for a trial court to include the costs of sale that are a direct result of the

19

disposition of property, where such costs are speculative in nature, we hold that including such costs in the valuation of property constitutes an abuse of discretion."). As to the unliquidated tangible assets, he offers no further analysis or any citation to authority or to the record. The issue is therefore waived.

### III. APPELLATE ATTORNEY'S FEES

As a final matter, Wife requests appellate attorney's fees pursuant to Indiana Appellate Rule 66(E), which provides in pertinent part, "The Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." The Court of Appeals uses extreme restraint in awarding appellate damages because of the potential chilling effect upon the exercise of the right to appeal. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007). Husband's sparse citations to the record have caused some difficulty in evaluating his claims, particularly where the trial record fills eight volumes; however, these deficiencies do not rise to a flagrant disregard of our appellate rules. Further, we cannot say that Husband's appeal is frivolous where he has successfully shown trial court error. We therefore decline to award appellate attorney's fees.[5]

### CONCLUSION

We therefore affirm in part, reverse in part, and remand with instructions to issue an order consistent with this opinion.

KIRSCH, J., and VAIDIK, J., concur.

---

[5] Wife has also filed a Motion for Damages Pursuant to App. R. 66(E), making the same argument presented here, which we deny by separate order issued contemporaneously with this opinion.

20